54—CHARLES J. McDONAND, assignee, &c., plaintiff in error *vs.* FREDERICK SIMS and others, defendants in error.

[1.] Courts of equity usually act in obedience and in analogy to the statutes of limitations, in cases where it would not be unjust and inequitable to do so.

[2.] Lapse of time is no bar to cases of express trust, created by deed or will, where proceedings are instituted within a reasonable time, and there is no doubt either as to the origin or the existence of the trust.

In Equity. Bill, &c. Tried before Judge FLOYD. In Bibb Superior Court. May Term, 1847.

McDonald *vs.* Sims and others.

For the facts of the case and the errors alleged, the reader is referred to the opinion delivered by the Supreme Court.

CHARLES J. McDONALD, in *pro. per.*

This writ of error brings before this Court, two causes which were submitted to the jury together, and which were partially connected, as will be seen from the transcript of the record.

The plaintiff in error was the assignee of an execution obtained against Frederick Sims, and which was levied on certain negroes which were claimed by Henry G. Ross, as trustee of Mrs. Susan Sims the wife of the defendant in execution. The defendant in execution was in possession of the negroes levied on, at the time of the levy. The judgment on which the execution was issued, was obtained at November Term, 1842. The note on which the judgment was obtained, was dated the 15th day of July, 1841. The defendant, Sims, executed the deed of settlement set forth in the bill of exceptions, on the 27th day of September, 1841, in which are embraced the negroes levied on, and in which it is recited that he is seised to his own use and of his own property, of the negroes named, which is recorded the 29th day of September, 1841. The execution docket showed the indebtment of Sims, at the time of the execution of the deed of settlement. Marriage articles between Sims and his wife, executed 3d October, 1832, and recorded 13th day of November, 1843, and executed prior to the marriage, were read. These articles are fully set out in the bill of exceptions. It will be seen that Sims stipulates, that so soon as the debts of Mrs. Wells, the intended wife, were paid, for which purpose he was authorized to dispose of any portion of the property he might think fit, and also as soon as all litigation in regard to the said Susan's property should be ended, and all expenses paid, and a suitable compensation for his time, trouble and attention to said business, he would settle on the said Susan, through the intervention of trustees, the whole of her (the said Susan's) estate which should remain, whether real or personal estate or money, &c. That the charge of the Court may be fully comprehended, it is proper to state, that the bill in chancery filed by plaintiff in execution, was submitted to the jury at the same time, which bill contained allegations that the property levied on, was a portion of the property owned by Mrs. Sims prior to the marriage, and embraced in the marriage articles. The Court charged

McDonald *vs.* Sims and others.

the jury, that the property was levied on as the individual prop-
erty of Frederick Sims, and that unless they should be of opinion
that it was his individual property; it could not be found subject at
law, and that for the purpose of coming to a conclusion on this
point, they must look into the testimony that was given; that it all
depended, in the opinion of the Court, upon whether the property
levied on was the property embraced in the ante-nuptial articles
of agreement, entered into between Mrs. Wells and Mr. Sims.
If it was that property, it was not subject, and that, for the pur-
pose of ascertaining whether it was the same, they might refer to
the allegations in complainant's bill, in which it was so alleged,
and these allegations bound him.

The bill filed by complainant alleged, that the note on which
the judgment at law was founded, was given for professional ser-
vices, for the payment of which the ante-nuptial articles of
agreement provided, and prayed that the property levied on might
be subjected, by the decree of the Court, to the payment of that
debt, provided the property should be condemned at law; or that
it might be decreed to be sold, and the proceeds applied to the
payment thereof; or that an account should be taken of the pro-
fessional services of complainant, and that the payment therefor
should be decreed from the trust property set apart for that object
in the ante-nuptial articles. The defendants answered, and denied
that the consideration of the note was that alleged in the com-
plainant's bill, but was a totally different consideration; and then, in
answer to an amendment to his bill, defendant Sims answers, that
it was without consideration, but given at complainant's request
and for his accommodation, and it was in fact complainant's debt;
and he fixes the *time* at which it was given, on which depends the
truth or falsehood of his sworn statement of the circumstances
under which it was given. This is proven to be untrue by an
officer of the bank, and the books of the bank where the note
was negotiated. Complainant could not prove the consideration
for which the note was given, but he proved the allegation of Sims'
answer to be false. The complainant proved his services, and the
value of them in the litigation, the expenses of which were to be
paid by Sims from the property prior to the settlement agreed to
be made on his wife, and that the last case was finally settled in
1840.

I will proceed to show that the property is subject to the exe-
cution under the facts proven, and that the charge of the Court

as .embraced in the first ground of error, is erroneous. All the property of the defendant is bound by the judgment. *Prince* 426, 451. Was the property levied òn, the property of the defendant, or was it divested by the marriage articles of 3d October, 1832 ? or did these articles prevent the marital rights of Sims from attaching to Mrs. Wells' property, on the consummation of the marriage ? I shall argue the case on the assumption, that the property levied on was a part of the same embraced in the ante-nuptial articles— which, by the way, was not proven.

Property of the wife, on marriage, vests in the husband. *Prince* 225. The marriage is a gift of all chattel interests of the wife to the husband. 1 *Bacon Abr.* 476, 479. *Clancy Rights of Women.* This is the general effect of marriage on the rights of property of the wife. Did the marriage articles, entered· into between Sims and wife, prevent this effect ? or, in other words, did they prevent the marital rights of Sims, the husband, from attaching to the property ? It is only necessary to examine them to discover that, so far from it, it was not so intended ; it was expected and intended that the legal estate should vest in Sims ; they were executed prior to marriage, both parties were *sui juris*, no trustees were interposed, no conveyance of title was made, and there is nothing in the transaction which prevented the usual effect of marriage, on the property and rights of property of the wife. Indeed, the articles show that both parties understood the effect, and that the legal estate should vest in Sims ; for they provide that he " should settle, by the intervention of trustees, the whole of her, the said Susan's, estate'." · Now, if it was not known and expected that the title should vest in him, why stipulate that *he should settle,* &c. ? He has power to sell what property he shall think fit; the latter part of the articles provides for the sale of the property at any time, provided he should deem it necessary, with the consent of his wife expressed under her hand. This clause has no reference to the power of sale to pay debts, expenses of litigation, &c., but if it did, as the legal estate was in Sims, and he held it manifestly as trustee for the purposes specified in the articles, it could have been placed there with no other object than that Mrs. Sims might be apprized of the proceedings of the trustee, and satisfy herself of the justice and necessity of his proceedings. But the articles did not convey the property out of Mrs. S.; if they did not, the marital rights of Sims attached, and he took the property with all its incidents. 2 *Roper on Hus. & Wife,* 156.

The agreement entered into before marriage, became extinguished by the marriage. *Ath. on Mar. Set., t. p.* 171; *Watkyns* vs. *Watkyns*, 2 *Atk. R.* 97.

The ante-nuptial articles, then, having no effect upon the title to the property, it was subject to his debts at law.

That Mrs. Sims is entitled to the protection of a court of chancery, against the general creditors of her husband, I do not question; but when she applies to that court, other parties, who have a prior equity, will also be protected. The claim cause is exclusively at law, and has no connexion with the cause in chancery, except so far as that cause seeks to have the proceeds of the sale of the property levied on, applied to the execution levied, as being a debt for which the trust property is liable.

The charge of the Court to the jury, that in investigating the claim cause they might refer to the allegations in complainant's bill, for the purpose of ascertaining whether the property levied on was embraced in the ante-nuptial articles, is erroneous. 1 *Phil. Ev.* 358; 7 *Term. R.* 3; 3 *Phil. Ev.* 923; *Norris' Peake*, 85. The bill in chancery was not offered or read as evidence; had it been, all its allegations would have gone together, those in complainant's favour as well as those against him. 1 *Starkie Ev.* 285. The bill, if used as evidence, would have made out the whole of complainant's case. But it was neither read as evidence, nor commented on as evidence, by counsel on either side.

I maintain that the instruction of the Court to the jury, that the statute of limitations presented a complete bar to the complainant's demand for professional services, was erroneous. The Court said, that if it was an action at law against Sims and wife for these services, the statute would bar the claim, and that the statute is equally a bar in equity as at law. It is true, that, when the plaintiff in equity has a remedy at law against the same party for the same demand, in a matter where there is not a direct trust, the statute is a bar in both courts; but the present is not such a case. It is true that an action at law might have lain against Sims and his wife for services rendered; but it is equally true that, on the consummation of the marriage, Sims, in virtue of the marriage articles, became a trustee for the payment of all Mrs. Sims' debts contracted prior to the marriage, as well as for the payment of the expenses of the litigation respecting her property: and her creditors, and persons rendering services in the litigation, could pursue him at once. It was not necessary to have sued Sims and his wife on their legal

liability, to have entitled complainant to a remedy against Sims, on the trust deed or marriage articles. And here seems to have arisen the misconception of the Court. If he had pursued his action at law, he could not there have subjected the trust property. Had the articles been carried into effect so far as Mrs. Sims was concerned, the remedy at last was in equity, and on the ante-nuptial articles. The party would have had a right to pursue the trust property. This may be done even in cases of implied trust, (2 *Story Eq. Jur.* 497, 498,) when the trust property is ultimately the demand, first at law. A court of chancery, to prevent this circuity of action, will give a direct remedy. *ib.* It makes no difference that complainant was not a party by name to the marriage articles. If a trust was created by them for his benefit, though without his knowledge, he had a right, when it came to his knowledge, to affirm the trust and enforce its execution. 1 *Johns. Ch. R.* 129; *Hill on Trustees,* 338, *note* 1.

A debt may be barred as against executors at law, when if a trust is created by will for the payment of debts, it may be collected in equity. *Jones* vs. *Scott,* 4 *Eng. Ch. R. cond.* 415, 422. In this case an action at law had been instituted, in which the Statute of limitations was pleaded; the action was discontinued, and the debt was recovered in equity. In this case Lord Brougham held, that although the personal estate of the testator was assets in the hands of the executor for the payment of debts, without directions in the will, yet if such direction was given, a trust was thereby created which would prevent the bar of the statute in equity. This decision underwent revision in the House of Lords, and they reversed the decision of the chancellor only so far as to hold, that a direction in a will for payment of debts, was merely inoperative so far as the personal estate was concerned; in other words, the direction did not create a trust. 14 *Eng. Ch. R. cond. 2d pt.* 504; but the principle is sustained, that when a trust is created the statute presents no bar. *ib. note.* The same principle is enforced in *Hughes* vs. *Wynne,* 11 *id.,* in which the Master of the Rolls says, it is not to be inferred that a man has no debt, because he does not go to law to enforce payment when he has a trustee to pay him. *Paige R.* 172, 173. This principle has been recognised and enforced in other States. In the case of *Buchan* vs. *James,* decided in South Carolina, the chancellor says, that the well-established doctrine of this Court, based on the authority of the English Chancery, is, that the Statute of limitations will not bar a demand

growing out of a direct trust, but will a demand arising out of a trust raised by implication of law. 1 *Speer R.* 382.

Again, the trust to which both Sims and his wife were parties, was created by deed. They created the trust. Sims' liability as trustee is by deed, and could he have been held accountable at law as trustee, the statute bar is twenty years. *Prince* 577. As the complainant has no remedy on the instrument, at law, but is entitled in equity to relief, the statute can present no bar.

Had the ante-nuptial articles been executed, and the settlement made on Mrs. Sims in accordance therewith, but without paying the expenses, (these expenses being a charge on the separate estate,) the statute would present no bar. 2 *Dan. Ch. Pr.* 732; *Norton* vs. *Turvill*, 2 *P. Wills. R.* 144. But the defendants did not insist in their answer upon the statute except as to a part of the demand, when the judge's charge embraced the whole.

The principle of the decision is, that the Statute of limitations does not run against a trust; and it applies equally to a trust created by deed for the payment of debts whether the property subjected to the trust be real or personal estate. *Hill on Trustees* 341.

How a trust may be created. *ib.* 65.

The settlement made by Sims to Ross, in trust, not having been made in conformity to the ante-nuptial articles, can derive no validity from them. *Roberts Fraud't Con.* 245.

POE & NISBET, for defendants in error.

To the first point we object and say, that the marital rights of Sims did not attach by the marriage; for the marriage articles were entered into for the purpose of avoiding this result, and provided only that the debts due by said wife and the expenses of the litigation, should be paid out of her property.

1. Courts of equity endeavour as much as possible to give effect to marriage articles. *Atherley,* 27 *Law Lib.* 48, 58, 64.

2. The claims of creditors, I apprehend, are never an objection to the execution of marriage articles, unless they were creditors by judgment or other matter of record, *before* the articles were entered into. *Ath. on Mar. Set.* 68; *Finch* vs. *Earl of Winchelsea*; 1 *P. Will.* 277.

In this case the demand was never reduced to judgment against

McDonald *vs.* Sims and others.

the *cestui que'* *trust*, and not even against Sims until long after the marriage.

To the second assignment of error, we reply, that the allegations in *the form of admissions* in the complainant's bill, are and can be received as evidence against him. 1 *Greenl. Ev.sec.* 212 ; *Bull. Nisi Prius*, 235 ; 1 *Ph. Ev.* 391.

To the third assignment of error, " that the Court erred in ' charging, that if this was an action at law, and the statute of limitations would bar the claim, it would be equally a bar in equity," because it was proven that the services sued for, were rendered for said Susan while sole, and for herself and said Sims after marriage in relation to the property embraced in said marriage articles, and that said Sims was then a trustee for the payment of said demand, and the statute did not bar said claim in equity." This ground of the plaintiff in error's case is fatal to the first ground of exception taken, which holds " that the *legal* estate vested in the husband by the marriage, notwithstanding the marriage articles, and could only be divested by a settlement made in pursuance of the articles.". We admit the general rule, that no time bars a direct trust as between the trustee and the *cestui que trust* ; but as between a creditor and a trustee, the statute may be a bar. *Webster* vs. *Webster*, 10 *Vesey R.* 93 ; 1 *Brown Ch. R.* 479 ; *Townshead* vs. *Townshead*, 17 *Vesey R.*; *Beckford and others* vs. *Wade, ib.* 95 ; *Ex'rs. of Hamilton* vs. *Adm'r. of Smith*, 3 *Murphy*, 118.

Although the statute of limitations speaks of actions in the courts of law, yet it is the duty of the courts of equity to infuse its spirit into their decisions, as much as can be done without violating its own fundamental maxims. *Thompson and Wife* vs. *Blair*, 3 *Murphy*, 583. And courts of equity act in obedience to the statute of limitations. *Hovenden* vs. *Annesley*, 2 *Scho. and Lef.* 629 ; 2 *Story Eq. sec.* 1520, *note* 2. Even where there was a trust for the payment of debts, in a will, Lord Hardwicke allowed the statute of limitations. *Lacon* vs. *Briggs*, 3 *Atk. R.* 106; *Evans* vs. *Tweedy*, 1 *Bev.* 55. This was in a will of personal estate. 1 *Brown Ch. R.* 482, *n. b.* But the trust attempted to be set up by the plaintiff in error, viewed in the most favourable light for said plaintiff, can amount to nothing more than a *constructive trust.* (See articles.) And constructive trusts are affected by the statute of limitations. *Beckford*, vs. *Wade*, 17 *Vesey R.* 95; *Farnham* vs. *Brooks*, 9 *Pick.* 343; *Robinson* vs. *Hook*, 4 *Mason R.* 139.

But this is not even a constructive trust in favour of the plaintiff

in error, for the articles merely give a permission to the trustee (Sims) to dispose of part of the trust estate to defray the expenses of litigation, &c., the trust being created for the benefit and protection of the wife.

Fourth ground of error. "Because the defendants did not insist on the bar of the statute of limitations, except as to a part of the claim." Of course, the Court's charge in favour of the statute, only referred to so much as was relied on in defendant's answer.

Fifth ground of error. "Because the statute had not taken effect from the end of the litigation (but plaintiff had ceased to represent the defendants in the cases) to the commencement of the suit in chancery, prior to which time Sims could not execute the settlement on said Susan." We hold that the provision in the marriage articles, securing to Sims the right to use so much of his wife's property as might be necessary to pay her previous debts and the expenses of litigation, before he should be required to make the settlement, was incorporated into the marriage articles for the sole benefit of Sims, and not for the benefit or security of creditors; as Sims, who was then (and so continued many years,) fully able to pay, was, after the marriage, legally bound for his wife's previous and subsequent debts.

*By the Court.*—LUMPKIN, J., delivering the opinion.

The facts in this case are somewhat entangled. It rests, however, upon a single point. Frederick Sims made and delivered to Charles J. McDonald, his promissory note for eight hundred dollars, bearing date the 15th of July, 1841, payable ninety days after date to the order of McDonald at the Marine and Fire Insurance Bank of the State of Georgia. McDonald indorsed this note to said bank; upon failure of payment at maturity, the bank sued and recovered judgment against Sims, on the note; and after a return of *nulla bona* by the sheriff, the execution was assigned to McDonald, he having advanced to the plaintiffs the full amount due thereon. McDonald caused this *fi. fa.* to be levied on three slaves Aaron, Ellen and Hannah, as the property of Sims, which were claimed by Henry G. Ross as trustee of Susan Sims the wife of the defendant. Pending this claim, McDonald filed his bill on the chancery side of the court, against Frederick Sims, Susan Sims his wife, and her trustee Henry G. Ross, alleging that the said Susan Sims, then Susan Wells, as the widow and execu-

trix of Nicholas W. Wells, her former husband, was extensively involved in litigation, growing out of the various business transactions of the said Nicholas W., in his life time, which are enumerated in the bill.    That the said Susan, as such executrix, engaged the professional services of the complainant, not only in the various cases specifically set forth, but in many others both in the Superior and Inferior courts, in which the estate of her late husband was interested, and also in advising and assisting her as 'to the proper management of the said estate generally; and that for all of said services, the complainant was well entitled to have eight hundred dollars, or some other large sum.

That the said Frederick Sims intermarried with the said Susan Wells, and by virtue thereof possessed himself of the assets of the estate of the said Nicholas W. Wells, in the hands of the said Susan at the time of said marriage ; and that the complainant was employed as counsel to defend a case brought against said Sims, by one William T. W. Daniel and his wife Martha, for a negro girl, which they claimed as a bequest under the will of the said Wells.    That no sum was agreed upon for his services in this last case, but that he well deserved to have therefor the further sum of fifty dollars.

That in the month of October, 1832, prior to the intermarriage of the said Frederick and Susan, they entered into a marriage agreement.    The articles recited that a marriage was about to take place between the parties; that said Susan was possessed of a considerable estate, real and personal, and that she was involved both in debt and litigation ; and they provided that so soon as the debts of his intended wife were paid, for which purpose he was authorized to sell any portion of her property, and likewise so soon as all litigation in relation to her property was ended, and all expenses paid growing out of said litigation, and a *suitable* compensation allowed the said Frederick Sims for his time and trouble, and attention to the settlement of her affairs, that then the residue of said property was to be settled upon the said Susan, by Sims, upon the terms stipulated in this ante-nuptial contract.    The marriage articles were not recorded until September, 1841, and prior to the registration thereof, Sims had become greatly embarrassed, and indebted to an amount more than sufficient to exhaust the whole of said property.    He then made a conveyance in *trust* to Henry G. Ross of the property which he got by his wife, and of the negroes levied on, among the rest.

The bill charges that the eight hundred dollar note given by Sims to McDonald was in part payment and satisfaction of his account against Mrs. Sims for professional services. It may be well enough to remark, that the deed of trust executed by Sims to Ross, on the 27th of September, 1841, makes no allusion at all to the articles of marriage, and on the contrary recites, that Sims was seised and possessed of the property therein conveyed, in his own right.

The prayer of the bill is, that an account may be taken of the professional services rendered by the complainant, and that whatever is found due, may be decreed to be paid out of the trust property; and that the slaves levied upon by the execution, and claimed by the trustee, be sold and applied to the extinguishment of complainant's claim.

The answer of Sims and wife, admitted that a portion of the services set forth in the bill were rendered; a part they denied. Sims utterly denied that the eight hundred dollar note was given, either in whole or in part, for said services; but alleges that it was founded upon another and a different consideration altogether. And by way of plea, the defendants insist upon the Statute of limitations in bar of the complainant's account for professional services.

At May term, 1847, of the Superior Court of Bibb county, Judge Floyd presiding, the claim case and bill were both submitted to a jury at the same time, and after the testimony had closed, the Court delivered the following charge to the jury, to wit:

" That they must bear in mind to keep the two cases distinct; that one was a claim case seeking to subject the property levied on to the payment of the execution given in evidence; the other was a cause in equity, alleging that the note on which the judgment was founded, was given for professional services, for which, complainant contended, the property levied on was bound as trust property, in preference to older judgment-creditors, and praying that if the property was found subject, the proceeds of the sale thereof should, by their decree, be applied to its payment; or that an account should be taken of the professional services of complainant rendered, as charged in the bill, and the amount decreed, and the payment thereof decreed from the trust property; that they would first direct their attention to the claim case; that the property was levied on as the individual property of Frederick Sims, and that unless they should be of opinion that it was his individual

property, it could not be found subject at law, and that for the purpose of coming to a conclusion on this point, they must look into the testimony that was given; that it all depended, in the opinion of the Court, upon whether the property levied on, was the property embraced in the ante-nuptial articles of agreement entered into between Mrs. Wells and Mr. Sims. If it was that property, it was not subject; and for the purpose of ascertaining whether it was the same, they might refer to the allegations of complainant's bill, in which it was so alleged, and those allegations bound him. That if they believed the property was the individual property of the defendant, they must find it subject. And, furthermore, if in considering both the claim and the case in equity, they were satisfied from the testimony that the consideration of the note was one of the debts, the payment of which was intended to be secured by the ante-nuptial articles, and that the property levied on was the property of Mrs. Sims before the marriage, they ought to decree it subject to the execution, inasmuch as it was a fund set apart to Sims wherewith to pay the debts with which he would become chargeable by the marriage. The Court then proceeded to charge the jury on the bill in chancery, that if they should not find the property subject to the execution as Sims' individual property, they would proceed to ascertain, under the bill, whether the consideration of the note was for professional services rendered in the litigation, for the payment of which provision was made in the ante-nuptial articles of agreement. That the complainant had so alleged it, and the defendants had denied it in the answer; that as far as the answer was responsive to the charge in the bill, they were evidence for the defendants, unless contradicted by two witnesses, or one witness and circumstances suporting his evidence; that the answer might be impeached by its inconsistency, as well as in the manner before stated; but that the jury must inquire if the complainant had submitted any evidence proving the consideration of the note to have been for these services, and if he had not, they must decree for the defendants on that ground.

"The complainant then prays, that an account of his professional services may be taken, and payment decreed from the trust property. To this part of the complainant's case the defendants have pleaded the Statute of limitations, and, in the opinion of the Court, the statute presents a complete bar to the complainant's demand. If this was an action at law brought by complainant against Sims

and wife, for these services, the statute would bar the claim; and the statute is equally a bar in equity as at law.

"But, there is a point, (continued the Court,) on which this case must turn. The marriage articles entered into by Mrs. Wells and Mr. Sims, constitute the latter a trustee for the payment of her debts, contracted before her intermarriage with Sims; and if the note was given for a debt of that description, they must decree the sale of the property, either under the execution or under their decree, and order the amount to be paid on the execution."

To this charge, the complainant in the bill excepts, on three grounds:

1st. He contends, that the Court erred in instructing the jury that if the property levied on belonged to Mrs. Sims before marriage, it was not subject to the execution against Sims—it being protected by the marriage articles and the settlement subsequently made in pursuance thereof.

2. In holding, and so charging the jury, that the allegations in the bill were evidence against the complainant.

3. By charging, that the complainant's demand for professional services was clearly barred by the Statute of limitations.

In the main, we are of opinion that the charge was not only [1.] fair, but as favourable to the complainant as he was entitled to ask. Upon one point we are inclined to think that there was error in the instructions; and as it is material to the issue, and must ultimately control the case, we shall confine our consideration to that. It is, as to the applicability of the Statute of limitations to the complainant's account for professional services.

And I remark, that it will be found upon examination of the numerous cases upon this doctrine, that there is great ground for embarrassment, arising from the apparent contradiction of the cases.

I believe that it has always been conceded, since the Statute of Jac. I. was enacted, that the Statute of limitations was a good plea in equity as well as at law. 1 *Ch. R.* 38; 1 *Ch. Cas.* 102. The doctrine has uniformly been, that though the courts of equity were not within the words of the statutes, the time presented by them was adopted by analogy, as a fit and just period for a bar in equity of analagous claims. The difficulty in this case does not arise, therefore, from the fact that this claim for professional services, to which the statute is pleaded, is presented on the chancery side of the Court.

[2.] The question to be decided here is, what kind of trusts are withdrawn from the operation of the Statute of limitations, and whether this case comes within the rule. And I must confess, that after the most extended research which my time and library would afford me, I find great confusion and marked inconsistency in the numerous adjudications upon this point. In one thing, however, they all agree. It is, that whenever there is an express trust created by writing, either deed or will, one over which the courts of equity have an original, exclusive and peculiar jurisdiction, such trusts are not subject to the Statute of limitations. 1 *Brow.* 554; 3 *P. Wills. R.* 310; 17 *Vesey R.* 87; 2 *Sch. & Lef. R.* 630; 20 *Johns. R.* 516.

The only remaining inquiry then is, whether this be such a trust. A part of the services of McDonald for the estate of Wells, were rendered before, and a part after, the intermarriage of the widow and executrix with Sims. The marriage articles refer to the fact, that Mrs. Wells was involved in debts and litigation. These debts were to be paid, for which purpose Sims was authorized to sell any portion of her property that he might see fit. And they further provided, that so soon as all litigation in regard to her affairs should be ended, *and all expenses paid,* and a suitable compensation allowed to Sims for his time and trouble in attending to this business, he was then to settle on his intended wife, and *not before,* through the intervention of trustees, the property which he got by her. Does not this amount to an express provision for the payment of McDonald's claim out of this property, which has since been conveyed by Sims to Ross in trust for Mrs. Sims? Could Sims have been compelled to make this conveyance until this demand was paid? and, having made it voluntarily before this claim was satisfied, does not the lien follow the property and attach to it in the hands of Ross?

I presume that no argument is needed to show, that where a trust is created for the benefit of a third person, though without his knowledge, yet he may afterwards affirm it and enforce the execution of it. *Moses* vs. *Murgatroyd,* 1 *Johns. Ch. R.* 473; *Cumberland* vs. *Codrington,* 3 *id.* 261; *Shepherd* vs. *McEvers,* 4 *id.* 136.

Is there any remedy at law adequate to the exigency of this case? Is it not a direct and subsisting trust for the benefit of McDonald to the extent of his demand? This is no attempt to render the statute a dead letter, by changing the forum; by substituting a bill

in equity for an action of assumpsit or account. On the contrary, it would appear to be one of those matters exclusively cognizable in equity, and where suitable redress could be administered no where else.

Sims expressly denies, in his answer to the bill, that his note of $800 was given in liquidation of the complainant's account. Even if it had been, unless it were agreed at the time to be taken in payment, it would constitute no obstacle to the present proceeding. It is not even pretended by any of the defendants, that McDonald has ever been paid. Why, then, should not this trust property be made liable for debts, not contracted merely for its use, but for its very existence? Our law greatly favours liens, and we hold that it would be dangerous, if not destructive, not to trust estates merely, but to the best interests of society, to permit this claim, under the law and the circumstances of this case, to be defeated.

Upon this ground, then, the judgment of the Court below must be reversed.